WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>                    Plaintiff, ) <br> ) <br> vs.                           ) <br> ) <br> ROBERT D. ROBINSON, ) <br> ) <br>                    Defendant. ) <br> _____) | No. 1:18-cv-0015-HRH |

<u>O R D E R</u>

<u>Motion for Entry of Judgment</u>

Plaintiff United States of America moves for entry of judgment.[1] Defendant Robert D. Robinson has not responded to the motion. Oral argument was not requested and is not deemed necessary.

<u>Background</u>

This case arises out of the sinking of the M/V CHALLENGER "in the Gastineau Channel, Juneau, Alaska on or about September 12, 2015."[2] Plaintiff alleges that defendant

---

[1] Docket No. 25.

[2] Declaration of Richard R. Boes [etc.] at 3, ¶ 7, which is appended to United States' (continued...)

-1-

was the owner and operator of the CHALLENGER.[3] "The CHALLENGER discharged oil into the Gastineau Channel, which is a navigable water of the United States. In addition, . . . the vessel posed a continuing and substantial threat of discharge of oil."[4] "[T]he United States Coast Guard Sector Juneau responded to the call that the CHALLENGER had sunk" and "[r]esponders deployed a hard boom to contain the oil sheen, and marked the Vessel as a navigation hazard."[5] The Coast Guard Federal On Scene Coordinator ("FOSC") "established a Unified Command comprised of both Federal, State, and local stakeholders to deal with the sinking of the Challenger."[6] On January 14, 2016, the Coast Guard approved the FOSC's request "to raise and destroy the CHALLENGER."[7]

"From approximately January 26 until March 10, 2016, responders worked to raise, dewater, refloat, tow, and cut into pieces the Vessel for disposal."[8] Plaintiff alleges that this "operation was extensive and required the use of a crane barge, an 18-ton crane, 2 landing

---

[2](...continued)
Motion for Entry of Judgment [etc.], Docket No. 25.

[3]Verified Complaint of the United States at 3, ¶¶ 9-10, Docket No. 1.

[4]Boes Declaration at 3, ¶ 7, appended to United States Motion for Entry of Judgment [etc.], Docket No. 25.

[5]Id. at 3, ¶¶ 9-10.

[6]Id. at 4, ¶ 12.

[7]Id. at 4, ¶ 15.

[8]Id. at 4, ¶ 16.

craft, a skiff, divers, generators, and a 20-foot heated container."[9] Plaintiff alleges that "[a]sbestos abatement testing revealed 20% asbestos on piping and in insulation and 65% asbestos found in the fibers in exhaust lagging."[10] Plaintiff further alleges that "[t]he vessel's paint also contained significant quantities of lead[.]"[11] Plaintiff alleges that "[e]ach of the foregoing materials comprise hazardous substances within the meaning of CERCLA."[12] In addition, "[a] total of approximately 2,038 gallons of oily water mixtures were removed from the Vessel."[13] The Coast Guard incurred costs of $2,541,197.98 "to remove and remediate the oil pollution and substantial threat of oil pollution from the CHALLENGER[.]"[14]

"The NPFC paid these costs from the" Oil Spill Liability Trust Fund ("OSLTF") "and sent a Notice of Potential Liability ('NOPL') to [d]efendant Robinson informing him that the CHALLENGER was identified as a source of a pollution incident."[15] "On September 11, 2017, the NPFC sent a bill to [d]efendant Robinson for $2,541,197.98."[16] The bill informed

---

[9]Verified Complaint of the United States at 5, ¶ 31, Docket No. 1.

[10]Id. at 5-6, ¶ 32.

[11]Id. at 6, ¶ 32.

[12]Id.

[13]Boes Declaration at 4, ¶ 16, appended to United States Motion for Entry of Judgment [etc.], Docket No. 25.

[14]Id. at 5, ¶ 17 and Exhibit 2 thereto.

[15]Id. at 5, ¶ 18.

[16]Id. at 5, ¶ 19 and Exhibit 1 thereto.

Robinson that as the owner and/or operator of the CHALLENGER, he was responsible for "the costs incurred responding to this pollution incident[.]"[17] "To date, [d]efendant Robinson has failed to pay any portion of the invoice."[18]

Plaintiff commenced this action on November 8, 2018. In the first, second, and third causes of action, plaintiff asserts claims pursuant to the Oil Pollution Act of 1990 ("OPA"),[19] alleging that Robinson is liable for the costs incurred in responding to the discharge of oil that occurred as a result of the sinking of the CHALLENGER. In the fourth and fifth causes of action, plaintiff asserts CERCLA claims,[20] alleging that Robinson is liable for all response costs and remediation costs incurred in connection with the sinking of the CHALLENGER. In the sixth cause of action, plaintiff asserts a claim pursuant to the Federal Debt Collection Procedures Act, alleging that Robinson has violated the Act because "instead of discharging debts owed to the United States," he has "transferred, sold, spun off, and assigned assets so

---

[17]Exhibit 1 at 1, Boes Declaration, appended to United States' Motion for Entry of Judgment [etc.], Docket No. 25.

[18]Boes Declaration at 5, ¶ 19, appended to United States' Motion for Entry of Judgment [etc.], Docket No. 25.

[19]"The OPA provides that a party responsible for a vessel that discharges or threatens to discharge oil into navigable waters is liable for removal costs and damages, including removal costs incurred by the United States." United States v. Hyundai Merchant Marine Co., 172 F.3d 1187, 1188 (9th Cir. 1999) (internal citation omitted).

[20]CERCLA "imposes strict liability for environmental contamination upon four broad classes of covered persons[,]" one of which is "the current owners and operators of a vessel or facility. . . ." Team Enterprises, LLC v. Western Investment Real Estate Trust, 647 F.3d 901, 907 and n.2 (9th Cir. 2011).

-4-

as to prejudice and cause irreparable harm to the United States."[21] In the seventh cause of action, plaintiff asserts a claim based on 31 U.S.C. § 3713, the Federal Priority Statute.

On February 4, 2019, defendant, proceeding pro per, answered plaintiff's complaint. In his answer, Robinson denied that he was the owner or operator of the CHALLENGER.[22] He also denied that he managed, demise chartered, or controlled the CHALLENGER.[23]

On March 1, 2019, a scheduling and planning order was entered.[24] The scheduling and planning order called for initial disclosures to be made by March 29, 2019; preliminary witness lists to be exchanged by April 15, 2019; final witness lists to be served by December 15, 2019; fact discovery to close on January 30, 2020; and expert discovery to close on March 30, 2020.[25]

On January 24, 2020, plaintiff moved "to modify the Scheduling Order by extending the fact discovery deadline due to defendant Robinson's lack of participation in the discovery process, as well as his complete failure to adhere to several [c]ourt initiated deadlines. . . ."[26] Plaintiff contended that defendant had not served his initial disclosures or his final witness

---

[21] Verified Complaint of the United States at 9, ¶ 53, Docket No. 1.

[22] Defendant's Answer to Complaint [etc.] at 2-3, ¶¶ 9-10, Docket No. 10.

[23] Id. at 3, ¶¶ 11-13.

[24] Docket No. 14.

[25] Id. at 1-4.

[26] United States' Motion for Court Order [etc.] at 2, Docket No. 20.

list.[27]  Plaintiff also contended that defendant had not responded to its interrogatories and requests for production that had first been served on August 2, 2019, and then resent on November 8, 2019.[28]  Plaintiff further contended that at defendant's January 15, 2020 deposition, he was only able to answer limited questions "related to his [recent] injury, inability to testify, and receipt of previously served discovery."[29]  More specifically, Robinson testified that he had fallen off a roof on August 7, 2019, and that he had surgery, which led to additional complications, and that he was on heavy-duty pain medication, which caused difficulties with concentration and focus.[30]  Defendant also testified that there had been a delay in his receiving filings that plaintiff was sending him because the address being used was "not really" his address, but rather the address of a house that he was painting at the time he filed his answer.[31]  But, defendant did testify that he had received plaintiff's discovery requests on August 7, 2019.[32]

---

[27]Id. at 3.

[28]Id.

[29]Id. at 4.

[30]Deposition of Robert D. Robinson at 9:4-12:7, Exhibit C; 13:23-15:8, Exhibit D; United States' Motion for Court Order [etc.], Docket No. 20.

[31]Robinson Deposition at 5:19-6:23, Exhibit E, United States' Motion for Court Order [etc.], Docket No. 20.

[32]Id. at 7:1-20.

-6-

On February 13, 2020, the court granted plaintiff's motion to modify the scheduling order.[33] The court ordered defendant to serve his initial disclosures by March 16, 2020; to serve responses to plaintiff's discovery requests by March 16, 2020; and to file a witness list by March 16, 2020.[34] The court advised defendant that "[f]ailure . . . to fully comply with this order could result in the entry of an order for sanctions, which might include a judgment in plaintiff's favor."[35] Deadlines for fact discovery, expert discovery, and dispositive motions were also extended.[36] All discovery was to close by August 17, 2020, and dispositive motions were to be filed no later than September 17, 2020.[37]

On September 22, 2020, the court entered a certification of readiness for trial order as "[i]t appear[ed] that the pretrial calendar for this case has been completed. . . ."[38] In response, plaintiff notified the court that it intended "to file a dispositive motion asking the [c]ourt for entry of judgment" in its favor.[39]

---

[33]Order re Motion for Modification of Scheduling Order at 1, Docket No. 22.

[34]Id. at 2.

[35]Id.

[36]Id.

[37]Id.

[38]Order at 1, Docket No. 23.

[39]Status Report of the United States at 2, Docket No. 24.

On October 8, 2020, plaintiff filed the instant motion for entry of judgment.[40] On October 14, 2020, the court provided notice to defendant that he was "not at liberty to ignore" plaintiff's motion for entry of judgment and that "[a] response is required."[41] The court gave defendant until October 26, 2020 to file a response.[42] Defendant did not file a response by October 26, 2020.

On November 9, 2020, the court ordered plaintiff to re-serve defendant with the instant motion as the court was concerned that both it and plaintiff had been serving defendant at an incorrect address.[43] The court gave defendant fourteen days from the date of re-service to respond to the motion and again advised defendant that he was "not at liberty to ignore the [m]otion" and that "[a] response to the motion is required."[44] Plaintiff promptly re-served the motion on November 9, 2020.[45] To date, no response from defendant has been filed.

Pursuant to Rule 37, Federal Rules of Civil Procedure, plaintiff now moves for entry of judgment because defendant has failed to comply with the court's February 13, 2020

---

[40]Docket No. 25.

[41]Order from Chambers at 1, Docket No. 27.

[42]Id.

[43]Order from Chambers at 1, Docket No. 29.

[44]Id. at 2.

[45]Certificate of Service, Docket No. 30.

-8-

order.  Vickey Quinn, counsel for plaintiff, avers that as of October 8, 2020, "defendant has not served Initial Disclosures in this case[,] has not served responses to interrogatories[,] has not served responses to requests for admissions[, and] has not served responses to requests for production. . . ."[46]  Quinn further avers that "[d]efendant has not contacted counsel for the United States for any reason since the" court issued its February 13, 2020 order.[47]

## Discussion

"Rule 37 governs discovery disputes and sanctions stemming therefrom." Clasberry v. Albertson's LLC, Case No. 2:14-cv-00774-JAD-NJK, 2015 WL 9093692, at *2 (D. Nev. Dec. 16, 2015).  "The [c]ourt has 'great latitude' in fashioning sanctions pursuant to Rule 37." Id. (quoting Lew v. Kona Hosp., 754 F.2d 1420, 1426 (9th Cir. 1985)).

Plaintiff requests that the court enter judgment against defendant as a sanction for his failure to comply with the court's order requiring him to serve his initial disclosures and final witness list and to respond to plaintiff's discovery requests by March 16, 2020.  "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." Connecticut General Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).  "Only 'willfulness, bad faith, and fault' justify terminating sanctions." Id. (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)).  "'[D]isobedient conduct not shown to be outside the control of the litigant' is

---

[46]Declaration of Vickey L. Quinn [etc.] at 2, ¶¶ 2-5, which is appended to United States' Motion for Entry of Judgment [etc.], Docket No. 25.

[47]Id. at ¶ 6.

all that is required to demonstrate willfulness, bad faith, or fault." Henry v. Gill Industries, Inc., 983 F.2d 943, 948 (9th Cir. 1993) (quoting Fjelstad v. Amer. Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir. 1985)).

It was within defendant's control to participate in the discovery process. As plaintiff acknowledges, during some of the relevant time, the COVID-19 pandemic was ongoing, but that alone should not have prevented defendant from responding to plaintiff's discovery requests and producing his initial disclosures and witness list. There is also evidence that during some of the relevant time, defendant was dealing with significant medical issues,[48] but defendant could have advised the court and plaintiff that he was unable to meet his discovery obligations because of his medical issues, which he did not do. The court concludes that defendant's conduct has been willful.

If willfulness has been shown, then the court uses

> a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

Connecticut General Life Ins. Co., 482 F.3d at 1096 (quoting Jorgensen, 320 F.3d at 912). "This 'test' is not mechanical. It provides the district court with a way to think about what

---

[48]Robinson Deposition at 9:4-12:7, Exhibit C; 13:23-15:8, Exhibit D; United States' Motion for Court Order [etc.], Docket No. 20.

-10-

to do, not a set of conditions precedent for sanctions or a script that the district court must follow[.]" Id. "The most critical factor to be considered is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" Id. at 1097 (quoting Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1058 (9th Cir. 1998)).

"'The first two of these factors favor the imposition of sanctions in most cases[.]'" Henry, 983 F.2d at 948 (quoting Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). Here, as plaintiff contends, defendant's discovery violations are "the antithesis of actions that would be expected or required to meet the public's interest in an expeditious resolution of this litigation."[49] Defendant's discovery violations have also impeded the court's ability to manage its docket and caused the court to spend time and resources dealing with defendant's failure to participate in the discovery process. The first and second factors weigh in favor of imposing a case-dispositive sanction in this case.

As for the third factor, the risk of prejudice to plaintiff, "'[a plaintiff] suffers prejudice if the [defendant's] actions impair the [plaintiff's] ability to go to trial or threaten to interfere with the rightful decision of the case.'" Id. (quoting Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990)). Defendant's failure to participate in the discovery process has impaired plaintiff's ability to take this case to trial as this case is no closer to being trial-ready than it was when the parties filed their scheduling and planning conference report on

---

[49]United States' Motion for Entry of Judgment [etc.] at 6, Docket No. 25.

February 26, 2019, which was more than twenty-one months ago. Plaintiff would be highly prejudiced if defendant were allowed to not participate in the discovery process and then present his case by surprise at trial. The third factor weighs in favor of imposing a case-dispositive sanction in this case.

The fourth factor generally "cuts against" a terminating sanction because public policy favors cases being heard on the merits. Adriana Int'l Corp., 913 F.2d at 1412. But, that is not the case here because defendant has done nothing to allow this case to be heard on the merits. Defendant has had more than twenty-one months to raise any defenses or present any evidence that he might have that would defeat plaintiff's claims, but he has done nothing. The fourth factor weighs in favor of imposing a case-dispositive sanction in this case.

As to the fifth factor, it contains three subparts: "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." Connecticut General Life Ins. Co., 482 F.3d at 1096. There are lesser sanctions the court might consider, including

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part; [or]
> (iv) staying further proceedings until the order is obeyed[.]

Fed. R. Civ. P. 37(b)(2)(A). Here, the imposition of lesser sanctions would simply lead to more delay, without much chance of changing the ultimate outcome, which is a judgment in

-12-

plaintiff's favor.  If the court were to order certain facts be established, one such fact would undoubtedly be that defendant was the owner or operator of the CHALLENGER, which would likely result in a judgment in plaintiff's favor as the OPA is a strict liability statute. See United States v. HVI Cat Canyon, Inc., 314 F. Supp. 3d 1049, 1074 (C.D. Cal. 2018) (quoting Complaint of Metlife Capital Corp., 132 F.3d 818, 820–21 (1st Cir. 1997) ("'The OPA imposes strict liability for pollution removal costs and damages on the responsible party for a vessel or a facility from which oil is discharged.'"). The result would be the same if the court were to preclude defendant from introducing evidence or raising a defense.  Any evidence defendant might want to come forward with would surely pertain to the issue of whether he was the owner or operator of the CHALLENGER and he might try to raise a third-party defense.  If defendant were prohibited from offering evidence that he was not the owner/operator of the CHALLENGER or from asserting a third-party defense, then plaintiff would likely be entitled to a judgment in its favor.  If the court were to only strike defendant's answer, then plaintiff would be entitled to a default judgment pursuant to Rule 55.  There is also no reason to give defendant even more time in which to respond to plaintiff's discovery requests or make his initial disclosures and file a witness list. Defendant has been given multiple opportunities to adhere to the court's orders but has consistently ignored the court's orders.

The court has previously warned defendant about the possibility of case-dispositive sanctions.  Specifically, in the February 13, 2020 order, the court advised defendant that

-13-

"[f]ailure . . . to fully comply with this order could result in the entry of an order for sanctions, which might include a judgment in plaintiff's favor."[50] And, the court twice ordered defendant to file a response to the instant motion, which he never did.

The fifth factor, as well as factors one through four, weigh in favor of imposing a terminating sanction in the form of a judgment in plaintiff's favor. "'Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate.'" Connecticut General Life Ins. Co., 482 F.3d at 1097 (quoting Valley Eng'rs, 158 F.3d at 1058). This is such a case.

"Once the court has determined that entry of a default judgment" pursuant to Rule 37 "is warranted, it must determine the appropriate remedy." Newpark Mall LLC v. Crge Newpark Mall, LLC, Case No. 15-cv-0817-PJH, 2016 WL 742009, at *5 (N.D. Cal. Feb. 25, 2016) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)). "'A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'" Id. (quoting Fed. R. Civ. P. 54(c)). "Further, a plaintiff seeking default judgment must 'prove up' the amount of damages it is claiming." Id. (quoting Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003)).

---

[50]Order re Motion for Modification of Scheduling Order at 2, Docket No. 22.

In its complaint, plaintiff sought damages, pursuant to the OPA, of

> any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees.[51]

Plaintiff seeks the entry of a judgment in the amount of $2,541,197.98, which is the amount "[t]he USCG incurred . . . to remove and remediate the oil pollution and substantial threat of oil pollution from the CHALLENGER[.]"[52] Plaintiff has offered evidence in the form of a declaration from Richard Boes, the Senior Project Manager for the Case Management Division of the United States Coast Guard, National Pollution Funds Center, that this is the amount incurred.[53] This amount includes "the contractor invoices, the POLREPs [pollution reports], personnel time, travel expenses, and records of equipment use."[54] Plaintiff is not seeking, as part of the default judgment, interest, attorney's fees, or other adjudicative costs.

Plaintiff has adequately "prove[d] up" the amount that it is requesting. Newpark Mall LLC, 2016 WL 742009, at *5 (citation omitted). While the amount that plaintiff is seeking may seem out of proportion for what could be viewed as defendant's violation of one court

---

[51]Verified Complaint of the United States at 2, ¶ 5, Docket No. 1.

[52]Boes Declaration at 5, ¶ 17, appended to United States' Motion for Entry of Judgment [etc.], Docket No. 25.

[53]Id. at 1, ¶ 1.

[54]Id. at 5, ¶ 20.

order (the February 13, 2020 order), defendant has done more than violate one court order. Defendant has completely failed to participate in the discovery process. Defendant had an opportunity to mount a defense to plaintiff's attempt to hold him responsible for the costs incurred in dealing with the sinking of the CHALLENGER. But instead, defendant did nothing. Thus, the amount that plaintiff is seeking is not excessive.

## Conclusion

Plaintiff's motion for entry of a judgment[55] is granted. The court concludes that Rule 37(b) sanctions are appropriate. Defendant's answer shall be stricken and a default judgment, in accordance with plaintiff's complaint and the declaration of Richard Boes, shall be entered.

The clerk of court is directed to enter judgment in plaintiff's favor and against defendant Robert D. Robinson in the amount of $2,541,197.98.

DATED at Anchorage, Alaska, this 10th day of December, 2020.

/s/ H. Russel Holland
United States District Judge

---

[55]Docket No. 25.